AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
### for the
Northern District of New York

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched or identify the person by name and address)*<br>(1) ONE IPHONE WITH BLUE COLORED BACKING;<br>(2) ONE TCL CELLULAR PHONE WITH BLACK COLORED BACKING; AND<br>(3) ONE IPHONE WITH PURPLE COLOR BACKING, CURRENTLY LOCATED AT 135 TRIPPANY ROAD, MASSENA, NEW YORK 13662 | )<br>)<br>)<br>)   Case No.  8:24-mj-  163   (GLF)<br>)<br>)<br>) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A

located in the Northern District of New York, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☒ evidence of a crime;
- ☒ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 U.S.C. § 1324 | (alien smuggling and conspiracy to commit alien smuggling) |
| 8 U.S.C. § 1325 | (illegal entry) |

The application is based on these facts:
See Attached Affidavit

- ☒ Continued on the attached sheet.
- ☒ Delayed notice of *30* days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

John Hanley, U.S. Border Patrol Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by Telephone *(specify reliable electronic means)*.

Date:  *March 21, 2024*

*Judge's signature*

City and state:   Plattsburgh, NY

Honorable Gary L. Favro
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

IN THE MATTER OF THE SEARCH OF:
(1) ONE IPHONE WITH BLUE COLORED
BACKING;
(2) ONE TCL CELLULAR PHONE WITH
BLACK COLORED BACKING; AND
(3) ONE IPHONE WITH PURPLE COLOR
BACKING, CURRENTLY LOCATED AT
135 TRIPPANY ROAD, MASSENA, NEW
YORK 13662.

Case No. 8:24-mj- 163   (GLF)

**AFFIDAVIT IN SUPPORT OF AN
APPLICATION UNDER RULE 41 FOR A
WARRANT TO SEARCH AND SEIZE**

I, John A. Hanley, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application under Rule 41 of the Federal

Rules of Criminal Procedure for a search warrant authorizing the examination of property,

specifically: (1) One iPhone with blue colored backing ("Device A"); (2) One TCL Cellular

phone with black colored backing ("Device B"); (3) One iPhone with purple colored backing

("Device C"); (collectively hereinafter "the Devices"), which are currently in law

enforcement possession, and the extraction from that property of electronically stored

information described in Attachment B.

2.      I am a Border Patrol Agent (BPA) with the United States Department of

Homeland Security (DHS), Bureau of Customs and Border Protection (CBP), United States

Border Patrol (USBP), and assigned to the Massena Border Patrol Station. I have been a

Border Patrol Agent since August 2011. My primary duty is to assist in the prevention of

illicit trafficking of people and contraband between the official ports of entry. My authority

to perform this mission is articulated in the Immigration and Nationality Act, sections 235

1

and 287, and Title 8 U.S.C. Section 1357. These bodies of law relate to, among other things, a Border Patrol Agents authority to interrogate any alien or person believed to be an alien, and to make an arrest of any alien who is entering or attempting to enter the United States in violation of the immigration laws. To enforce these laws, I have received training at the Federal Law Enforcement Training Center in Artesia, New Mexico in Law, Operations, Firearms, Driving Techniques, and Physical Techniques.

3.     I have investigated violations of the Immigration Nationality Act (INA) including illegal entry of aliens in violation of Title 8, United States Code, Section 1325, and the smuggling of aliens in violation of Title 8, United States Code, Section 1324. I have written and executed search warrants for electronic devices and have reviewed the evidence contained within. I have analyzed data and information from electronic devices and presented that data as evidence during criminal investigations.

4.     The applied-for warrant would authorize the forensic examination of the Devices, as described in Attachment A, for the purpose of identifying electronically stored data described in Attachment B. Based on my training and experience and the facts set forth in this affidavit, there is probable cause to believe that Jose RODRIGUEZ-Arriaga ("RODRIGUEZ-Arriaga") and other as-yet unidentified co-conspirators have committed violations of Title 8, United States Code, Sections 1324 (alien smuggling and conspiracy to commit alien smuggling) and 1325 (illegal entry) ("SUBJECT CRIMES"). There is also probable cause to search the property described in Attachment A, for evidence of these crimes as described in Attachment B.

5.     This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

2

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

6.     As described further in Attachment A, the Devices are currently located at U.S. Border Patrol-Massena Station,135 Trippany Rd, Massena, New York 13662.

7.     The applied-for warrant would authorize the forensic examination of the Devices for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

8.     On Wednesday February 28, 2024, at approximately 5:53 a.m. Border Patrol Agents ("BPAs" or "agents") assigned to the Massena Border Patrol Station observed a blue Dodge Durango bearing a front license plate from Texas ("Durango" or "vehicle") turn onto Blanchard Street in Fort Covington, NY.  Fort Covington is a town bordering the United States and Canada international boundary.

9.     The water treatment plant on Blanchard Street is a commonly used landmark for smugglers to pick up individuals who have illegally entered the U.S. and how are attempting to be transported away from the immediate border further into the interior of the U.S. Approximately one hour prior to the Durango being observed on Blanchard Street, BPA's had apprehended three subjects in a wooded area just to the east of Blanchard Street who were unlawfully present in the U.S. It was suspected that there were two subjects that were still outstanding, and that the Durango was in the area to pick them up.

10.     As agents turned onto Blanchard Street, they observed the Durango driving away from the side of the roadway near the water treatment plant and travel west towards High St. As the Durango passed agents, they observed the front license plate from Texas did not match the state of the issuance for the rear license plate.

11.     Based on the totality of the circumstances, agents activated their emergency equipment and initiated a traffic stop on State Route 37 approximately one mile south of Burns-Holden Road, which is an east-west road that runs parallel to the U.S./Canada border. As agents approached the Durango, they observed the rear license plate appeared to be issued by the state of Maine. Agents approached the driver, later identified as Jose RODRIGUEZ-Arriaga, and began to question him regarding his immigration status. RODRIGUEZ-Arriaga appeared visibly nervous, and his hands appeared to be shaking uncontrollably. RODRIGUEZ-Arriaga was the sole occupant of the vehicle.

12.     Agents questioned RODRIGUEZ-Arriaga as to what country he was a citizen of, and RODRIGUEZ-Arriaga stated he was a citizen of Maine. Agents again asked what country he was a citizen of, and RODRIGUEZ-Arriaga stated El Salvador. As agents were questioning RODRIGUEZ-Arriaga, he was becoming increasingly more anxious. At that time, agents attempted to place RODRIGUEZ-Arriaga under arrest for being in the United States illegally. As agents attempted to place handcuffs on RODRIGUEZ-Arriaga while he was still inside the vehicle, he began resisting and pulling away from agents. RODRIGUEZ-Arriaga pushed agents away and began rolling up his window.

13.     Agents struck the window with their flashlight, breaking it attempting to regain control of RODRIGUEZ-Arriaga. RODRIGUEZ-Arriaga then put the Durango in drive and accelerated as he turned to the left into traffic, where the agent was standing, causing the agent to dangerously jump backwards into the south bound lane of State Route 37 in order to avoid being struck by the suspect vehicle.

14.     Upon fleeing the traffic stop, agents immediately notified U.S. Border Patrol dispatch via radio. Agents did not pursue the vehicle after it fled from the traffic stop due to

it fleeing from the stop. The vehicle was then spotted by New York State Police ("NYSP") south of Malone, NY on State Route 30. NYSP initiated a pursuit of the vehicle and utilized a controlled tire device on the vehicle. RODRIGUEZ-Arriaga lost control of the vehicle while attempting to turn causing the vehicle to roll over.   The pursuit ended on County Route 45 in Tupper Lake, NY.  After being cited for several traffic violations, RODRIGUEZ-Arriaga was then turned over to the Massena Border Patrol station for processing. At the station, record checks revealed that RODRIGUEZ-Arriaga is a citizen of El Salvador with no authorization to enter or remain in the United States. RODRIGUEZ-Arriaga was processed with a notice to appear with no bond. As of March 21, 2024, RODRIGUEZ-Arriaga is being held at the Buffalo Federal Detention in Batavia, NY.

15.     Based on my training and experience in this and other cross border criminal investigations I have been involved with, including individuals entering the United States illegally, individuals crossing the border illegally will often communicate and coordinate with someone to pick them up once in the United States or to inform them that they successfully crossed the border via cellular telephone. Individuals involved in crossing the border illegally often use a cellular telephone's GPS function to search for and map out potential crossing and pickup locations and to navigate to such places. An additional function of cellular telephones that can be utilized by individuals crossing illegally includes the camera, as individuals will often take photos of where they are crossing the border illegally.

16.     Additionally, smugglers often communicate with each other using cellular phones and downloaded applications to coordinate smuggling events. Smartphones, such as the Devices, can also be used to access social media. Based on my training, knowledge, and experience of alien smuggling, I know that social media platforms, such as Facebook, are

often used by smugglers to find customers and for communication between smugglers and aliens illegally entering the United States.

       17.     The Devices are currently in storage at the U.S. Border Patrol-Massena Station and have been there since February 28, 2024. In my training and experience, I know that the Devices have been stored in a manner in which their contents are, to the extent material to this investigation, in substantially the same state as they were when the Devices first came into the possession of the U.S. Border Patrol.

## TECHNICAL TERMS

       18.     Based on my training and experience, I use the following technical terms to convey the following meanings:

     a.   Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading

information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b.  IP Address: The Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address looks like a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static— that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

c.  Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

d.  Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

e.  Portable media player:  A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files.  However, a portable media player can also store other digital data.  Some portable media players can use removable storage media.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can also store any digital data.  Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

f.  GPS:  A GPS navigation device uses the Global Positioning System to display its current location.  It often contains records the locations where it has been.  Some GPS navigation devices can give a user driving or walking directions to another location.  These devices can contain records of the addresses or locations involved in such navigation.  The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth.  Each satellite contains an extremely accurate clock.  Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers.  These signals are sent by radio, using specifications that are publicly available.  A GPS antenna on Earth can receive those signals.  When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

g.  PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

19.     Based on my training, experience, and research, I know that the Devices have capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

20.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

21.     *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Devices were used, the purpose of their use, who used them, and when.  There is probable cause to believe that this forensic electronic evidence might be on the Devices because:

  a.  Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

  b.  Forensic evidence on a device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

  c.  A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

  d.  The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators.  Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves.  Therefore, contextual

information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

22.     *Nature of examination.*   Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Devices consistent with the warrant.  The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the Devices to human inspection in order to determine whether it is evidence described by the warrant.  The examination will be performed by representatives from the Department of Homeland Security and their designees.

23.     *Manner of execution.*   Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

24.    I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Devices described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

John Hanley
Border Patrol Agent
United States Border Patrol

I, the Honorable Gary L. Favro United States Magistrate Judge, hereby acknowledge that this affidavit was attested to by the affiant by telephone on March 21 , 2024 in accordance with Rule 4.1 of the Federal Rules of Criminal Procedure.

Hon. Gary L. Favro
United States Magistrate Judge

12

## ATTACHMENT A

The property to be searched are the following:

      a. Device A: Samsung Cellular Phone with a clear case, seized from Jose RODRIGUEZ-Arriaga

      b. Device B: One TCL Cellular phone with black colored backing seized from Jose RODRIGUEZ-Arriaga

      c. Device C: One iPhone with purple colored backing, seized from Jose RODRIGUEZ-Arriaga

(collectively the "Devices"). The Devices are currently located at U.S. Border Patrol-Massena Station, 135 Trippany, Massena, New York 13662.

      This warrant authorizes the forensic examination of the Devices for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

### Particular Things to be Seized

1.     All records on the Devices described in Attachment A that relate to violations of Title 8, United States Code, Sections 1324 (alien smuggling and conspiracy to commit alien smuggling) and 1325 (illegal entry) ("SUBJECT CRIMES"), involve Jose RODRIGUEZ-Arriaga and other as-yet unidentified co-conspirators, including:

      a.   Listings of incoming and outgoing calls with corresponding date/time of calls;

      b.   Stored telephone and address directories;

      c.   Direct connect and identification numbers;

      d.   Pictures and videos;

      e.   All audio recordings;

      f.   All voice mail recordings;

      g.   All location and GPS data;

      h.   All instant messaging and related stored communications;

      i.   All SMS messages and related stored communications; and,

      j.   Any other notations or electronic storage of any kind.

2.     Evidence of user attribution showing who used or owned the Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

      a.   Records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

1

3.      As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.